IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| BARBARA J. PLEMMONS, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 7:02-CV-0167-BH(R) |
| v. § | |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the provisions of Title 28, United States Code, Section 636©, and an order of the Court in implementation thereof, subject cause has been transferred to the undersigned United States Magistrate Judge. Before the Court are *Tables of Contents and Authorities for Brief for Plaintiff*, filed July 8, 2003, and *Defendant's Brief*, filed October 7, 2003. Plaintiff did not file a reply. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned is of the opinion that the final decision of the Commissioner should be **AFFIRMED.**

**I. BACKGROUND[1]**

**A.   Procedural History**

Barbara J. Plemmons ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. On June 19, 1996, Plaintiff protectively filed an application for disability benefits from June 5, 1996, under Title II and Title XVI of the Social Security Act. (Tr. at 101-05, 272-75.) Plaintiff claimed

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

she was disabled due to chondromalacia of the right knee and synovitis of the right knee. (Tr. at 114.) Plaintiff also claimed disability due to diabetes, depression, and hypertension. (Tr. at 92.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 79-85, 88-91.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 92.) A hearing, at which Plaintiff personally appeared and testified, was held on March 25, 1998. (Tr. at 41-76.) On November 27, 1998, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 14-31.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 6-7.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 6.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    1.     Age, Education, and Work Experience

Plaintiff was born on October 3, 1951. (Tr. at 45.) She obtained an associates degree in nursing in 1973. *Id.* At the time of the hearing, she was studying social work. (Tr. at 46.) She previously worked as a home health nurse, quality assurance nurse, outpatient nurse, chemotherapy nurse, charge nurse, and machine tender. (Tr. at 46-48.)

    2.     Medical Evidence

On January 2, 1996, Plaintiff was seen by Guillermo A. Pino, M.D. (Tr. at 178.) Plaintiff reported that she had injured her right knee on December 15, 1995, while walking across her yard. *Id.* Plaintiff was unable to walk and was using a brace. *Id.* On January 3, 1996, Plaintiff was admitted to Bethania Regional Health Care Center for knee surgery. (Tr. at 148.) The diagnosis was

a right medial meniscus tear, chondromalacia of the patella and medial femoral condyle, and synovitis of the right knee. (Tr. at 147.) Dr. Pino performed a partial right medial meniscectomy, chondroplasty of the right patella and medial femoral condyle, and a partial synovectomy of the right knee. *Id.*

Plaintiff returned to Dr. Pino on January 11, 1996, for follow-up. She was given medication and told to use a brace. (Tr. at 177.) At a subsequent visit on February 22, 1996, Plaintiff complained of continued problems navigating stairs, but stated that she generally felt much better. (Tr. at 175.) She was told to return to full duty in three weeks. *Id.*

At a visit on March 25, 1996, Plaintiff complained that even with a brace, her knee would give out intermittently. (Tr. at 173.) Dr. Pino recommended Plaintiff seek a "permanent sit down job." *Id.* On May 28, 1996, Plaintiff reported falling when her knee gave way. (Tr. at 171, 246.) Dr. Pino's notes state that she was "unable to do regular duty." *Id.*

Plaintiff was seen by Robert S. Smith, P.A. on July 30, 1996. (Tr. at 160.) He noted generalized grating of the right knee. *Id.*

On August 19, 1996, Plaintiff reported to Dr. Pino that she had occasional popping and pain in her right knee, but she denied having a new injury. (Tr. at 170.) Dr. Pino noted tenderness and grating. *Id.* Plaintiff again reported occasional pain and swelling on October 17, 1996. (Tr. at 169.) Dr. Pino recommended water aerobics for weight loss and range of motion improvement. *Id.*

On October 22, 1996, Plaintiff was again examined by Mr. Smith. (Tr. at 155.) He noted that her right knee exhibited generalized tenderness, decreased grating, and decreased "laxity." *Id.* Plaintiff was able to bear weight with some difficulty and had generalized gait problems. *Id.* She was to engage in range of motion exercises. *Id.*

Plaintiff returned to Dr. Pino on April 3, 1997. (Tr. at 243.) She reported pain and numbness causing difficulty working. *Id.* At that time, she was on long term disability from her job. *Id.* Dr. Pino noted tenderness but no swelling and no instability. *Id.* An EMG showed lumbar radiculopathy and, upon examination, Dr. Pino noted tenderness at L5 radiating to her right leg. (Tr. at 247.) He also found grating with range of motion. *Id.*

At a visit to Dr. Pino on July 1, 1997, Plaintiff reported occasional problems with her knee, but Dr. Pino noted she was making good progress. (Tr. at 241.) He recommended continuing conservative treatment. *Id.*

By October 21, 1997, Plaintiff still complained of difficulty walking due to her knee. (Tr. at 242.) She reported that she was considering a career change as she was unable to continue working as a nurse. *Id.* Dr. Pino encouraged the career change and recommended continued conservative treatment. *Id.*

3. Hearing Testimony

At a hearing on March 25, 1998, the ALJ heard testimony from Plaintiff, Emma Sue Perkins, Robert Louis Perkins, Timothy Plemmons, and a vocational expert. (Tr. at 41.) Plaintiff was represented by counsel at the hearing. *Id.*

a. Plaintiff

Plaintiff testified that she had attained an associates degree in nursing. (Tr. at 45.) At the time of the hearing, she was enrolled in a social work program. (Tr. at 46.) Plaintiff stated that she had last worked as a nurse on June 12, 1996. *Id.* At that time, she was performing modified nursing duty reviewing charts for quality assurance purposes due to her knee problems. *Id.* Plaintiff was told she could no longer perform that job after six months and was required to go on long term

disability because her employer needed her to perform regular nursing duties. (Tr. at 47.) Her regular duties involved home health care. *Id.* Prior to working in home health care, Plaintiff worked in utilization review of quality assurance, outpatient surgery, outpatient treatment, chemotherapy, and dialysis. (Tr. at 47-48.) During the time Plaintiff worked in utilization review of quality assurance, her duties did not involve lifting patients. (Tr. at 73.)

Plaintiff's activities included attending school, volunteering at a center for abused children, cooking simple meals, making dolls, and reading. (Tr. at 52-53.) Plaintiff spent approximately an hour and a half each week making dolls. (Tr. at 56.) She did not do much housework. *Id.* She rode a stationary bicycle, went on short walks, and swam when she could. (Tr. at 54.) She was able to drive on a daily basis. *Id.* Plaintiff occasionally took naps. (Tr. at 57.)

Plaintiff stated that she occasionally limped when walking. (Tr. at 55.) Her knee was frequently swollen. *Id.* She testified that she had been told by her doctor that her right knee would never return to full function. (Tr. at 56.) Plaintiff stated that she would eventually need a total knee replacement, but that her doctor wanted her to wait until the surgery was absolutely necessary. (Tr. at 57-58.)

Plaintiff stated that she took pain medication as needed. (Tr. at 68.) When she took the medication, she was sleepy the next day. *Id.*

Plaintiff testified that she was unable to work due to problems climbing stairs, lifting, and bending. (Tr. at 58.) She attributed her problems primarily to her knee, but noted that her back problems also probably contributed to them. *Id.* Plaintiff anticipated returning to work in three years. *Id.*

    b.  Emma Sue Perkins

Testimony was also received from Emma Sue Perkins. (Tr. at 64-65.) Ms. Perkins testified that Plaintiff had difficulty rising from a sitting position and that she limped somewhat. *Id.* Ms. Perkins had not noticed any improvement in Plaintiff's condition over the previous two years. (Tr. at 65.)

    c.  Robert Louis Perkins

Robert Louis Perkins, Plaintiff's fiancé also testified. (Tr. at 65-69.) Mr. Perkins stated that Plaintiff had difficulty walking and that she could not sit for long periods of time. (Tr. at 67.) He testified that if Plaintiff needed to take pain medication several days in a row, she became groggy. *Id.* Mr. Perkins stated that Plaintiff needed to rest and take naps during the day. (Tr. at 68.)

    d.  Timothy Plemmons

Plaintiff's son, Timothy Plemmons, testified. (Tr. at 70-71.) Mr. Plemmons stated that Plaintiff had difficulty getting up and moving around. (Tr. at 71.) Plaintiff needed to rest after being active during the day. *Id.*

    e.  Vocational Expert

The Vocational Expert ("VE") stated that Plaintiff's past relevant work as a registered nurse was skilled and heavy in strength demand. (Tr. at 73.) After questioning Plaintiff about her past work as a quality assurance nurse, the VE stated that it was skilled and sedentary in strength demand. *Id.*

The ALJ asked the VE to assume an individual such as Plaintiff who could lift or carry a maximum of twenty pounds, could frequently lift up to ten pounds, could stand and/or walk two hours in an eight hour work day, could sit six hours in a work day, would be limited to stooping,

kneeling, crouching, and balancing on an occasional or less basis, would occasionally be able to climb stairs or ramps, but would not be able to climb ladders, ropes, or scaffolds. (Tr. at 73-74.) The VE stated that such an individual could perform Plaintiff's past work as a quality assurance nurse. (Tr. at 74.) The VE also stated that there were numerous other sedentary nursing jobs. (Tr. at 74-75.) However, the VE stated that the jobs identified required alertness and that if medication caused a significant impact on the individual's ability to concentrate and complete detailed and complex work tasks, the individual could not perform the jobs listed. (Tr. at 75.)

**C.    ALJ's Findings**

The ALJ issued her decision denying benefits on November 27, 1998. (Tr. at 14-31.) In her findings, she determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability. (Tr. at 21.) The ALJ determined that Plaintiff's right knee impairment, diabetes, hypertension, and obesity caused more than slight work-related limitations and constituted severe impairments. (Tr. at 22.) The ALJ found that Plaintiff's impairments did not, singly or in combination, meet or equal the severity of any impairment in the Listings. *Id.*

The ALJ found that Plaintiff's allegations of disabling pain and other symptoms were not supported by credible facts and findings. (Tr. at 26.) The ALJ concluded that, although Plaintiff did experience some pain and discomfort in her knee, she was not precluded from engaging in all work activity. *Id.* The ALJ also stated that "[t]he evidence also does not indicate that [Plaintiff] suffers from side effects of medication, resulting in an inability to engage in work activity." (Tr. at 27.)

The ALJ noted Dr. Pino's February 1996 opinion that Plaintiff could be released to full work duty. (Tr. at 27.) The ALJ also noted that while Dr. Pino encouraged Plaintiff's decision to change

careers, he did not opine that she was unable to participate in substantial gainful activity. (Tr. T 28.)

The ALJ determined that Plaintiff retained the RFC to occasionally lift and carry up to twenty pounds, frequently lift and carry ten pounds, occasionally stoop, crouch, crawl, balance, kneel, and climb stairs or ramps, stand for two hours and sit for six hours in an eight-hour work day. (Tr. at 28-29.) The ALJ concluded that Plaintiff had the ability to perform the exertional demands of a range of light and sedentary work. (Tr. at 29.) The ALJ concluded that Plaintiff could return to her past relevant work as a quality assurance nurse, which was skilled and sedentary and did not require an exertional capability in excess of her RFC. *Id.* As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## II. ANALYSIS

**A.    Legal Standards**

1.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, but less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible

evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

    2.    <u>Disability Determination</u>

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

    1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

    2.    An individual who does not have a "severe impairment" will not be found to be disabled.

  3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

  4.  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

  5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**  ***Issues for Review***

  Plaintiff alleges that substantial evidence does not support the Commissioner's finding that she was not disabled because:

  (1)  The ALJ erred in failing to adequately consider the side effects of Plaintiff's medication;

  (2)  The ALJ erred in her characterization of Dr. Pino's opinion as to Plaintiff's ability to return to work;

(3)     The ALJ erred in her characterization of Plaintiff's daily activities; and

(4)     The ALJ erred in concluding that Plaintiff's past relevant work as a quality assurance nurse was sedentary.

## C.     *Issue One: Medication Side Effects*

Plaintiff asserts that the ALJ's determination of Plaintiff's RFC was in error because the ALJ failed to adequately consider the side effects of her medication. (P.'s Br. at 11-12.) In particular, Plaintiff claims that the ALJ failed to take into account the testimony of Plaintiff and her fiancé, the established side effects of the medication, and the VE's testimony concerning the vocational effect of the side effects alleged. *Id.*

"The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process." *Flores v. Massanari*, 2001 WL 1092796 (7th Cir. Sept. 13, 2001) (citing *Porch v. Chater*, 115 F.3d 567 (8th Cir. 1997); *Varney v. Secretary of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988)). A claimant's subjective testimony about the effects of her medication, albeit minimal, is sufficient to trigger an ALJ's duty to consider side effects of medication when assessing credibility of plaintiff's subjective complaints of pain. *Zeno v. Barnhart*, 2005 WL 588223, *12 (E.D. Tex. Feb. 4, 2005). However, a claimant's subjective complaints about the side effects of her medication must be supported by objective medical evidence. *Williams v. Barnhart*, 2002 WL 180706, *1 (5th Cir. Jan. 11, 2002).

With regard to Plaintiff's allegation that the ALJ failed to take into account the testimony of Plaintiff and her fiancé, the ALJ stated: "The claimant said that she takes pain medication, only as needed, and it makes her sleepy." (Tr. at 20.) She noted that Plaintiff rests between her college classes. *Id.* The ALJ also noted that Plaintiff's son stated that Plaintiff rested during the day. (Tr. at 21.) Additionally, the decision states that Plaintiff's fiancé testified that if she takes several pain

-11-

pills in a row, she gets sleepy. *Id.* The ALJ concluded that "[t]he evidence [] does not indicate that the claimant suffers from side effects of medication, resulting in an inability to engage in work activity." (Tr. at 27.) The Court has thoroughly reviewed the testimony provided by Plaintiff, her son, and her fiancé at the hearing, and the summary given by the ALJ is accurate.

Regarding the specific side effects of Plaintiff's medication, the ALJ did not directly address them. As Plaintiff points out, Naprosyn, which Plaintiff took for inflammation, contains a warning that "[c]aution should be exercised by patients whose activities require alertness if they experience drowsiness, dizziness, vertigo or depression." PHYSICIAN'S DESK REFERENCE, 2875 (2005). Talacen, which Plaintiff took for pain, contains the warning that "[s]ince sedation, dizziness, and occasional euphoria have been noted, ambulatory patients should be warned not to operate machinery, drive cars, or unnecessarily expose themselves to hazards." http://www.drugs.com/pdr/talacen_caplets.html. However, Plaintiff does not point to any evidence in the record indicating that she experienced sedating side effects such that she was incapable of performing work. Additionally, it is noteworthy that Plaintiff herself testified that she did not take pain medication on a daily basis. (Tr. at 68.)

In considering the VE's testimony, the ALJ noted that "[i]n response to further questioning concerning the claimant's possible need to rest occasionally, the vocational witness reported that nursing jobs typically have a lounge available wherein the individual can relax during break and meal periods." (Tr. at 29.) Although the VE did state that nursing jobs would not have an accommodation to take two thirty-minute naps a day, Plaintiff has pointed to no evidence indicating that such an accommodation is necessary.

Accordingly, the Court concludes that substantial evidence supports the ALJ's finding that the side effects of Plaintiff's medication did not result in an inability to engage in work activity.

### D.     Issue Two: Treating Physician's Opinion

Plaintiff alleges that substantial evidence does not support the ALJ's findings because she erred in her characterization of Dr. Pino's opinion regarding Plaintiff's ability to return to work. (P.'s Br. at 12-13.)  In particular, Plaintiff states that the ALJ erred as to the date of Dr. Pino's opinion that she could return to work, and that the ALJ failed to note Dr. Pino's change of opinion about her ability to work.  *Id.*

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence.'" *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  However, "[e]ven though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.2d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

The ALJ's decision states that in December 1996, Dr. Pino reported that Plaintiff could be released to full work duty.  (Tr. at 27.)  In fact, Dr. Pino made that opinion on February 22, 1996. (Tr. at 175.)  Subsequently, Dr. Pino recommended Plaintiff seek a "permanent sit down job."  (Tr. at 173.)  On May 28, 1996, Dr. Pino stated that she was "unable to do regular duty."  (Tr. at 171, 246.)  The ALJ noted that at a later visit, Dr. Pino encouraged Plaintiff in her plan to change careers. (Tr. at 28.)  However, the ALJ found that the physician's encouragement did not equate to an opinion that Plaintiff was unable to participate in substantial gainful activity.  *Id*.

The Court has throughly reviewed the records of Plaintiff's treatment by Dr. Pino. Although the ALJ erred in stating the date of Dr. Pino's initial opinion that Plaintiff could return to work, such error was not material to the ALJ's decision and does not require reversal. *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (noting that procedural perfection in administrative proceedings is not required and that the courts should not vacate a judgment unless the substantial rights of a party have been affected). Although Dr. Pino does appear to have believed that Plaintiff could no longer perform her past work as a home health nurse, the records do not support a conclusion that Dr. Pino believed Plaintiff unable to perform all nursing work. The Court finds no error in the ALJ's characterization of Dr. Pino's encouragement of Plaintiff in her pursuit of a career in social work.

### E. *Issue Three: Plaintiff's Daily Activities*

Plaintiff contends that substantial evidence does not support the ALJ's RFC finding because the ALJ erred in her characterization of Plaintiff's level of activity. (Tr. at 13-15.)

The ALJ stated that Plaintiff was:

> active, and her activities, despite reports of periodic resting during the day, are not inconsistent with substantial gainful activity. In addition to attending college and taking care of foreign exchange students, the claimant makes dolls, reads, walks, swims, bikes, drives and does laundry. The level of activity of her normal daily living is not suggestive of a disabling impairment.

(Tr. at 27.) Plaintiff does not state that she does not engage in any of the activities listed by the ALJ. Rather, she asserts that because the ALJ did not elaborate as to the extent to which she performs these activities, the ALJ erred. (Tr. at 13-15.) Plaintiff notes that she spends only twelve hours per week attending college; the foreign exchange students do not require much care; she spends only two hours per week making dolls; there is no evidence as to the time she spends reading; she takes only short walks; there is no evidence as to the frequency of swimming; she rides a stationary

bicycle rather than a conventional one; she drives for short periods only; and she does laundry in bits. *Id.*     Plaintiff claims that when looking at the actual amount of time spent at each activity, her activities are not consistent with substantial gainful activity. (Tr. at 15.)  Although Plaintiff correctly states that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," the ALJ is required to consider a claimants's daily activities in determining her RFC.  *See* SSR 88-13.  It is clear from the evidence before the ALJ that Plaintiff was engaged in a variety of activities, both inside and outside the home.  This Court, in applying the substantial evidence standard, may not reweigh the evidence before the ALJ. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  After thoroughly reviewing the evidence before the ALJ, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living were not inconsistent with substantial gainful activity.

### F.     *Issue Four: Past Relevant Work*

Plaintiff asserts that the ALJ erred in relying on the VE's testimony and concluding that Plaintiff's past relevant work as a quality assurance nurse was sedentary.  (P.'s Br. at 15-16.) Plaintiff notes that the DICTIONARY OF OCCUPATIONAL TITLES ("DOT") does not include that job title and that listed jobs with similar skills are light rather than sedentary.  *Id.*

Social Security Ruling  82-61 states that at step four of the social security inquiry, "[u]nder sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform: 1) The actual functional demands and job duties of a particular past relevant job; or 2) The functional demands and job duties of the occupation as generally required by employers throughout the national economy."  Thus, at this stage, "the claimant has the burden to show an inability to return to her previous specific job *and*

an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2nd Cir. 2003). In determining whether a claimant can perform her past relevant work, the Commissioner may use the services of a VE and other resources, such as the DOT. 20 C.F.R. § 404.1560(b)(2). Where there is a conflict between the VE's testimony and the DOT, the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). However, a VE's erroneous classification of the exertional level or skills required to perform a particular job, as it is performed in the national economy, could call into question the probative value and reliability of such testimony. *Id.*

In this case, the ALJ found that Plaintiff retained the ability to perform a range of light and sedentary work activity. (Tr. at 29.) In determining whether Plaintiff could return to her past work, the VE noted that most of Plaintiff's past jobs were nursing jobs performed at the heavy level, requiring her to occasionally lift patients. (Tr. at 72.) However, Plaintiff's current modified duty position as a quality assurance nurse allowed her to be seated while looking through charts. *Id.* The VE asked Plaintiff if she had ever otherwise been employed as a nurse in a job where she was not required to lift patients. (Tr. at 72-73.) Plaintiff responded that she had performed a similar job for "a couple of years" in "utilization review of quality assurance" and stated that she had done that job at a time prior to being placed on modified duty. (Tr. at 72.) In summarizing Plaintiff's past work, the VE stated that her past relevant work as a quality assurance nurse was "skilled and sedentary in strength demand." *Id.* The VE opined that an individual with Plaintiff's RFC would be able to perform that job. (Tr. at 74.)

Plaintiff correctly notes that the DOT does not contain a job listing of "quality assurance nurse." (Tr. at 15.) She asserts that because similar titles of "utilization-review coordinator" and

"quality assurance coordinator" are classified as light exertion rather than sedentary, there is a conflict between the VE's testimony and the DOT, and thus the ALJ erred in relying on the VE's characterization of Plaintiff's past work. (Tr. at 15.) However, under the circumstances presented in this case, there is no conflict between the VE's testimony and the DOT.[2] This is not a case where the VE's characterization of work as it is performed in the national economy conflicts with the DOT. Rather, the VE in this case was describing the job as actually performed by Plaintiff in the past. In contrast, the DOT describes jobs as they are generally performed. *Jasinski*, 341 F.3d at 185 (2nd Cir. 2003). "Many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the Dictionary." *Id.*

Here, the VE testified that an individual with Plaintiff's RFC could work as a quality assurance nurse as performed by Plaintiff in the past. (Tr. at 74.) Plaintiff did not object to the description of that job as sedentary and one in which she was primarily seated, reviewing charts. (Tr. at 72.) Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform her past work as a quality control nurse.

### III.   CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this the 23rd day of August, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[2] Additionally, the Court notes that Plaintiff did not object to the VE's characterization of her work as a quality assurance nurse as sedentary. *See Carey*, 230 F.3d at 146-47 ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.")